UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA | JUDGMENT INCLUDING SENTENCE |
| -v- | UNDER THE SENTENCING REFORM ACT |

MELSON RAHEEN MATHIS
------------------------------------x

CASE NUMBER:CR-02-891 (ARR)
PAUL RINALDO, ESQ
108-18 QUEENS BOULEVARD
 FOREST HILLS, NEW YORK 11375
Defendant's Attorney & Address

THE DEFENDANT:

**XXX** was found guilty on counts one, two of the superseding indictment after a
plea of not guilty.

Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve the
following offenses:

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 21 USC 846,<br>841(a)(1) &<br>841(b)(1)(A) | CONSPIRACY TO DISTRIBUTE<br>& TO POSSESS WITH INTENT<br>TO DISTRIBUTE HEROIN. | ONE (1)(S-4) |
| 18 USC 924(c)(1)(A)(iii) | USE OF A FIREARM IN RELATION<br>TO A DRUG TRAFFICKING CRIME. | TWO (2)(S-4) |

The defendant is sentenced as provided in pages 2 through  of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**XXX** Remaining counts are dismissed on the motion of the United States.
**XXX** It is ordered that the defendant shall pay to the United States a special
assessment of $200.00 which shall be due **XXX** immediately ___ as follows:

It is further ORDERED that the defendant shall notify the United States Attorney for this
district within 30 days of any change of residence or mailing address until all fines,
restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec #_____

Defendant's Date of Birth 11/30/74

Defendant's Mailing Address:

303 D AVENUE_____

SALISBURY, NORTH CAROLINA 28144

Defendant's Residence Address:

_____( SAME AS ABOVE )_____

_____

NOVEMBER 29, 2005
Date of Imposition of Sentence

_____
ALLYNE R. ROSS, U.S.D.J.

NOVEMBER 29, 2005
Date

A TRUE COPY ATTEST
Date:_____
ROBERT C. HEINEMANN
CLERK OF COURT

By:_____

DEPUTY CLERK

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of two hundred eighty two (282) months. This includes consecutive sentences on count one 162 months and on count two of 120 months.

__XXX__  The Court makes the following recommendations to the Bureau of Prisons: THAT THE DEFT BE HOUSED AT A FACILITY AS CLOSE TO THE MIDDLE DISTRICT OF NORTH CAROLINA.

____  The defendant is remanded to the custody of the United States Marshal.

____  The defendant shall surrender to the United States Marshal for this district,

        ____  at _____ a.m./p.m. on _____.
        ____  as notified by the Marshal.

____  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

        ____  before 12:00 noon on _____.
        ____  as notified by the United States Marshal.
        ____  as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____
_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this Judgment.

                                 _____

                               United States Marshal

                        By_____

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years.

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

1) DEFT SHALL NOT POSSESS ANY FIREARMS.

2) DEFT SHALL SUBMIT HIS PERSON, RESIDENCE, PLACE OF BUSINESS, VEHICLE, OR ANY OTHER PREMISES UNDER HIS CONTROL TO A SEARCH ON THE BASIS THAT THE PROBATION OFFICER HAS REASONABLE BELIEF THAT CONTRABAND OR EVIDENCE OF A VIOLATION OF THE CONDITIONS OF RELEASE MAY BE FOUND; THE SEARCH MUST ALSO BE CONDUCTED IN A REASONABLE MANNER AND AT A REASONABLE TIME; FAILURE TO SUBMIT TO A SEARCH MAY BE GROUNDS FOR REVOCATION; THE DEFT SHALL INFORM ANY OTHER RESIDENTS THAT THE PREMISES MAY BE SUBJECT TO SEARCH PURSUANT TO THIS CONDITION.

____ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;

2) the defendant shall not leave the judicial district without the permission of the court or probation officer;

3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

5) the defendant shall support his or her dependents and meet other family responsibilities;

6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;

8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;

9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of $ 200.00 , consisting
of a fine of $ N/A and a special assessment of $ 200.00 .

____ These amounts are the totals of the fines and assessments imposed on individual
counts, as follows:

This sum shall be paid ___ immediately
                       ___ as follows:

XXX  The Court has determined that the defendant does not have the ability to
pay any fines, cost of confinement or supervision.

          ___ The interest requirement is waived.
          ___ The interest requirement is modified as follows:

1    and take a plea in the case.  That's a factor for you to

2    consider.

3           I think obviously what I am arguing is that you can

4    weigh that against his involvement and his actions in the --

5    with regard to the other issues in the case as well.

6           THE COURT:  Let me start by addressing the various

7    disputes regarding the advisory guidelines calculations.

8           The defendant argues that the Presentence report

9    improperly calculates the offense level on Count One, the

10   heroin conspiracy, by cross-referencing Guideline 2A1.1, the

11   first degree murder guideline, to account for the murder of

12   Hector Pacheco, committed in furtherance of the conspiracy.

13          In defending the propriety of the cross-reference,

14   the government relies upon the trial testimony of Brian

15   Jefferson.  Regarding the Pacheco murder, Jefferson testified

16   that when Hector Pacheco arrived at Halsey Street, after

17   having beaten codefendant Bowman, defendant James Lytch said

18   to his brother Martese Lytch, "Give me the gun."   As

19   Jefferson related it, as Martese Lytch started to pull the gun

20   out, he hesitated and turned back to Jefferson, Mathis and one

21   or more other codefendants.

22          Mathis and Jefferson both then said to Martese

23   Lytch, "Give him the gun," after which Martese proceeded to

24   hand James Lytch the gun, and James shot and killed Pacheco.

25   When James Lytch shot and killed Pacheco, he was accompanied

GR      OCR      CM      CRR      CSR

1    by Bowman, and this is from the trial transcript at 1701 to

2    1704, and 1831 to 1833. From this testimony, the government

3    infers that Mathis explicitly approved the Pacheco murder.

4         At trial, however, the government called one other

5    eyewitness to the murder, Harvey Parrish. Parrish's account

6    of the events immediately surrounding the killing differed

7    from that of Jefferson, at least with respect to Mathis's

8    direct involvement. With the exception of Jefferson himself,

9    whom Parrish did not see at the scene, Parrish saw the same

10   group of people as did Jefferson when he arrived at Halsey

11   Street. According to Parrish, however, he first heard Pacheco

12   and Bowman arguing. Thereafter, he heard Bowman say to

13   Martese Lytch, "Hit him," after which he saw Martese Lytch

14   pass a revolver to James Lytch and saw James Lytch shoot

15   Pacheco.

16        Thus, according to Parrish's testimony, Mathis did

17   not explicitly approve the murder, nor did James Lytch ask for

18   a gun. Rather, the shooting episode was initiated by Bowman

19   who told Martese Lytch to "hit" Pacheco, prompting Martese to

20   pass the gun to his brother, James, to execute Bowman's order.

21   That is from the transcript at around 1356 to 1360.

22        Given this discrepancy between the testimony of the

23   government's only eyewitnesses to the murder, I cannot say

24   that I am persuaded by a preponderance of the evidence that

25   Jefferson's account is correct.

GR     OCR     CM     CRR     CSR

1         Thus, although Mathis was clearly present, I cannot

2 conclude that he played any active or direct role in the

3 shooting of Pacheco.

4         Even assuming that the evidence relating to the drug

5 conspiracy, the killing in furtherance of it, and Mathis's

6 presence at the scene, warrants cross-reference to the murder

7 guideline, however, the Application Note's reference to felony

8 murder and the resulting downward departure -- see Guideline

9 2A1.1, Application Note 2(B) -- would surely apply to

10 downwardly adjust to some extent Mathis's base offense level,

11 to a base offense level somewhere between 38 and 42. But were

12 no cross-reference to be made, Mathis's adjusted offense level

13 on the conspiracy count would be 42, in any event.

14         The trial evidence overwhelmingly established that

15 Mathis was a leader and organizer of The Four Horsemen, an

16 organization that distributed hundreds of kilograms, and

17 certainly well over 30 kilograms of heroin, during the period

18 of defendant's participation, and that Mathis reasonably

19 foresaw that the organization he led in fact distributed

20 heroin in that quantity.

21         Contrary to defense counsel's arguments, no Blakely

22 or Apprendi or Booker or Gonzalez problems are presented, as

23 the jury convicted Mathis of heroin conspiracy involving one

24 kilogram or more of heroin, which under the statute calls for

25 a prison term of ten years to life.

1       Accordingly, without application of the
2   cross-reference, Mathis's adjusted offense level in the heroin
3   conspiracy count is 42, calling for a prison term of 360
4   months to life.

5       Turning to Count Two, I note at the outset that
6   because I have determined to impose a non-guidelines sentence,
7   resolution of the parties' disputes concerning this count does
8   not affect the length of the total prison term to be imposed,
9   but, rather, the structure of the prison term.

10      Defendant argues that the presentence report wrongly
11  concludes that he is subject to the mandatory minimum ten-year
12  sentence called for by Section 924(c)(1)(A)(iii) because the
13  aggravating enhancement, discharge of a firearm, was not
14  submitted to the jury for determination beyond a reasonable
15  doubt.

16      Characterizing the aggravating enhancements defined
17  by the statute as elements of the offense, he urges that
18  Apprendi and Blakely bar imposition of any mandatory
19  consecutive sentence exceeding the five-year term provided in
20  18 United States Code Section 924(c)(1)(A)(i).

21      As the government retorts, the argument is
22  foreclosed by the Supreme Court's decision in Harris v United
23  States, 536 United States 545 (2002).

24      There the Supreme Court considered an Apprendi
25  challenge to a mandatory minimum sentence imposed for

GR      OCR      CM      CRR      CSR

brandishing a firearm during and in relation to a drug
trafficking crime under Subsection (ii) of the statute. The
Supreme Court held that the provisions of the statute calling
for increasing mandatory minimum sentences depending upon the
nature of a defendant's specific firearm use are sentencing
factors rather than elements of the offense. Because these
facts increase only the mandatory minimum sentence, but do not
extend the statutory maximums, judicial fact-finding
concerning them at sentence does not violate the Constitution.

Thus, the sole question here is whether the record
supports the conclusion that Mathis should be held responsible
for the discharge of a firearm during and in relation to The
Four Horsemen heroin conspiracy.

Based on the trial record, I am in agreement with
the government, that Mathis, one of the four bosses of the
organization who himself possessed and carried firearms in
relation to the activities of the conspiracy and insured that
the coconspirators also possessed or had access to firearms,
reasonably foresaw that firearms would be discharged in
connection with the conspiracy. This inference is especially
strong in light of the number of occasions on which
coconspirators in fact discharged firearms in incidents with
rival drug gangs.

For example, when a rival drug dealer, Mark Polite,
shot at Bowman in the context of a dispute over sales of

1  imitation Four Horsemen heroin, Mathis and two other Four
2  Horsemen bosses established a bounty for anyone who would
3  retaliate by shooting Polite.  Two of The Four Horsemen
4  workers, Jefferson and Jamal Cradle, in fact shot at Polite.

5  Additionally, following the Pacheco killing that was
6  at least in part an outgrowth of the drug rivalry between The
7  Four Horsemen and The Schaeffer Street Crew, a wave of
8  shootings erupted between the rival groups, all conduct that
9  was clearly foreseeable by Four Horsemen boss Mathis.

10  Accordingly, the trial evidence supports sentencing
11  Mathis under Count Two to the ten-year mandatory minimum
12  required under Subdivision (iii) of the statute, as it
13  establishes his responsibility for discharging a firearm in
14  relation to the offense.

15  As required by the sentencing statute, I have
16  considered the advisory guidelines sentence, that is,
17  360 months to life on Count One, to be followed by a
18  consecutive 120 months on Count two.

19  Further, there can be no question about the
20  seriousness of defendant's offense.  For a several year
21  period, between approximately 1997 and 2000, he functioned as
22  one of the four leaders of an extensive heroin trafficking
23  organization that typically sold 30 to $50,000 worth of heroin
24  per day, ultimately distributing hundreds of kilograms of
25  heroin and engaging in violent clashes with rival drug

GR    OCR    CM    CRR    CSR

1  dealers.

2        As already discussed, however, I do not find that
3  defendant was a direct participant in the Pacheco homicide.

4        Defendant is currently approximately 31 years old.
5  As related in the Presentence report, defendant's childhood
6  was not an easy one, as both of his parents were addicted to
7  cocaine.  Due particularly to his mother's addiction, it fell
8  to defendant to care for himself and his younger siblings.  He
9  is the product of a difficult ghetto upbringing.

10        Defendant has a daughter, Diera, age 14, from a
11  relationship in the early 1990s, and although he separated
12  long ago from Diera's mother, he maintained a good
13  relationship with Diera, visiting her regularly and assisting
14  in her support.  The importance of defendant's relationship to
15  Diera has been confirmed by Diera's mother.

16        Commencing in 1992, defendant's relationship with
17  another woman produced two children, Sharod, age eleven, and
18  Aisha, age ten.  When defendant and the children's mother
19  separated in 2001, defendant took custody of the children, who
20  resided with defendant and his sister for approximately
21  two-and-a-half years, until the defendant's arrest.  Although
22  the children are now being supported and cared for by the
23  defendant's sisters, they are reported to have had difficulty
24  adjusting to defendant's absence, as defendant has had a very
25  close relationship with them and they apparently have

GR    OCR    CM    CRR    CSR

1  virtually no relationship with their mother.

2         Defendant has a fourth child, Nasir, now age five,
3  from a third relationship, and prior to his arrest defendant
4  assisted in the child's financial support.  For approximately
5  one year, Nasir and his mother also lived with defendant, his
6  two other children, and his sister.

7         Defendant, although unemployed during this period,
8  cared for the three of his children who were then living with
9  him.

10         All family members consulted in the preparation of
11  the Presentence report commented on the closeness of
12  defendant's relationship with his children and the
13  significance to his children of their relationship with their
14  father.

15         Defendant himself has written an articulate and
16  sincere letter in which he acknowledges having made "bad
17  choices" and expresses his own feelings that he "should be
18  punished."  Referring to the pain of separation from his
19  "four beautiful children," he also acknowledges that he
20  "should have thought of all this before."

21         Notwithstanding defendant's failure to accept
22  responsibility by admitting his specific misconduct, the
23  letter conveys genuine remorse for his actions and a belief
24  that punishment is not simply inevitable but appropriate.

25         He also refers to his efforts to rebuild his life.

GR    OCR    CM    CRR    CSR

1   For several years after the conclusion of the charged offenses
2   and prior to his arrest, at the age of approximately 25, he
3   returned to North Carolina and with the help of his siblings
4   cared for three of his children.  During that time, he
5   apparently engaged in no further criminality.

6           Finally, defendant asks that he be permitted at some
7   time to return to society with an opportunity "to lead an
8   honest and productive life as a positive member in our
9   society."

10          Letters written on defendant's behalf also convey a
11  sense of defendant's positive side.  A letter from defendant's
12  friend, Alberta McLaughlin, a single mother, writes of
13  defendant's kindnesses toward and positive influences on her
14  son.  Both she and defendant's aunt, Jacqueline Cassel,
15  communicate a sincere confidence that given some opportunity
16  defendant has the potential to redeem his life and become a
17  productive citizen.

18          In light of all of these circumstances, I conclude
19  that an aggregate sentence of 282 months imprisonment is
20  sufficient, but no greater than necessary, to satisfy all of
21  the goals of sentencing.  Undeniably, a sentence of this
22  length is a severe one and it is one which I believe reflects
23  the seriousness of defendant's offense, promotes respect for
24  the law, and provides just punishment.

25          Defendant will not be released from prison until he

1 is in his fifties, at an age when the likelihood of recidivism
2 is greatly reduced. See the United States Sentencing
3 Commission, Measuring Recidivism: The Criminal History
4 Computation of the Federal Sentencing Guidelines, at 12.
5 The positive correlation between increasing age and decreasing
6 likelihood of recidivism is plainly relevant to the sentencing
7 goals of affording adequate deterrence and protection of the
8 public, and the sentence I intend to impose will, I believe,
9 amply satisfy these goals in defendant's case.

10      Also of significance, given defendant's strong
11 family ties, the chosen term of incarceration should allow
12 defendant, within the constraints of a necessarily severe
13 sentence, some opportunity to reunite with his family and
14 become, as he assures us he will, "a productive member of
15 society."

16      Accordingly, I sentence the defendant to the custody
17 of the Attorney General for a total of 282 months; that is,
18 162 months on Count One, to be followed by a consecutive
19 sentence of 120 months on Count Two.

20      The sentences are to be followed by a five-year
21 period of supervised release with special conditions.

22      I prohibit the possession of a firearm.

23      I impose a search condition, that he shall submit
24 his person, residence, place of business, vehicle, or any
25 other premises under his control to a search on the basis that

GR    OCR    CM    CRR    CSR

1 the probation officer has reasonable belief that contraband or

2 evidence of a violation of the conditions of release may be

3 found; the search must also be conducted in a reasonable

4 manner and at a reasonable time; failure to submit to a search

5 may be grounds for revocation; the defendant shall inform any

6 other residents that the premises may be subject to search

7 pursuant to this condition.

8      I make a finding that the defendant is unable to pay

9 a fine, but I will impose the mandatory $200 special

10 assessment.

11      MR. CURRIE:  Your Honor, to the extent there are

12 underlying indictments, we move to dismiss those at this time.

13      THE COURT:  The motion is granted.

14      MR. RINALDO:  Judge, finally, my client wanted me to

15 request that you designate him to a facility in the Middle

16 District of North Carolina, or whatever is close to that.

17 That's where most of his family resides.

18      THE COURT:  Yes.  I will make that recommendation to

19 the Bureau of Prisons.

20      MR. RINALDO:  Thank you.

21      THE COURT:  Mr. Mathis, you understand, obviously,

22 you are entitled to appeal your conviction and your sentence.

23      THE DEFENDANT:  Yes.

24      THE COURT:  A notice of appeal must be filed within

25 ten days.  I'm sure Mr. Rinaldo will continue to represent you